UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

CRIMINAL No. : 05 -10177

UNITED STATES OF AMERICA

v.

KENNETH LAMARCHE

**DEFENDANT'S RECOMMENDATION ON DISPOSITION**

Kenneth LaMarche is before this Court on the second violation of his supervised release. The Probation Officer asserts, and Mr. LaMarche agrees that on October 26, 2007, he voluntarily left the Coolidge House . Mr. LaMarche will stipulate that this action violated the terms of his supervised release, as ordered by this Court on April 27, 2007 . For the reasons stated below, Mr. LaMarche asks this Court , in lieu of incarceration, to reimpose the standard conditions, the special conditions of his previous supervision of restitution , participation in a mental health program, and access to financial information when requested by probation . In addition, the Court should impose two additional requirements : that he reside at a community corrections facility for fifty two consecutive weekends and that , during the week, he remain at home from 7:00 P.M. until 6:00 A.M.

The Probation Officer notes that Mr. LaMarche reported to the Coolidge House on July 7, 2007, as instructed by this Court, and was compliant with its rules until he left on October 26, 2007. On October 15, 2007, Mr. La Marche met with Joseph F. LaFratta, supervising U.S. Probation officer and advised him that he was having problems at the Coolidge House . Mr. LaFratta had him write a letter directly to the Court, which would be forwarded to the judge with a request for a status hearing . While still in the office, Mr. Lamarche wrote a letter to this Court that stated four concerns with his compliance with Coolidge House : 1. The demands of his job required him to go to Fall River . He was concerned that his employer would terminate his job if he could not go

there, and he would not be able to find a job that paid an equivalent salary as a convicted felon ; 2. The hours of his job did not permit him to eat at Coolidge House ( He was working nights at the time), so he was going without food ; 3. The 25% of his salary, required to be paid to Coolidge House was causing an economic hardship on himself and his family and 4. That his wife was uncomfortable visiting with him there, as she perceived some female employees as disrespectful to her, because of her race or the way she dressed . Although the probation officer indicated to Mr. LaMarche that he had forwarded this letter to the Court, it does not appear on the docket .

While Mr. LaMarche was at Coolidge House, his wife was working at Woodbriar Nursing Home in Wilmington, Massachusetts. Her hours of work were from 7 A.M. until 3:30 P.M. Their daughters, ages 6 and 8 had school from 8:05 A.M. until 3:05 P.M. The couple paid a neighbor to take the daughters to the bus in the morning and pick them up after school .

On Monday, October 15, 2007, the neighbor did not come to the apartment for the girls. So, the girls went outside and began asking people on the street for rides to school. A stranger did pick up the little girls, bring them to their school, and informed the principal . The principal called the mother who did not know that the neighbor had not come for the girls, and she was hysterical at the thought of what could have happened to her girls. She communicated this to Mr. LaMarche, who was even more anxious for a hearing before the Court . The neighbor told Mrs. LaMarche that she had a backache that day, but it would never happen again.

However, it did happen again . In the following week of October 22.2007, the neighbor did not come to the apartment to get the children. They stayed inside the apartment all day and did not show up at school . The principal of their school called the Massachusetts Department of Social Services ( D.S.S.) . The children did not let the D.S.S. workers into the house, so they waited outside

for the mother to come home. She was met by the D.S.S. workers when she came home, and understood them to say that they were going to take her children away . She reported this to Mr. LaMarche and told him that she would send the girls back to El Salvador, to live with their grandmother, if D.S.S. was planning to take the children.

Mr. LaMarche advised her to take the rest of the week off from work, through Friday, October 26,2007, so that she could take the girls herself to the bus. Mr. LaMarche hoped that he would have a hearing in the Court before that date, and would explain his situation. Although he had not yet appeared before the Court, on Friday, October 26th, 2007, he left the Coolidge House and advised his probation officer of his decision . He felt that he could not wait any longer, as his wife had to return to work on Monday and he was the only one who was available to take the children to school . ( He was then working nights.) ( When she returned to work on Monday, October 29th, she was told that she had been replaced by another worker).

The undersigned attorney spoke with Tonya, the Department of Social Services worker assigned to review their situation. She determined that there is no abuse or neglect in the family and has recommended that a case not be opened for them .. She opined that she met with the two little girls separately and that they have a warm and loving relationship with Ken, who they describe as their father.

The undersigned attorney spoke with Jim Sparks who is the mental health counselor for Mr. LaMarche. He indicated that Mr. LaMarche is making considerable progress in his self understanding of himself with respect to financial and family issues . ( This comment is also reflected in the probation department's memo.

If Mr. LaMarche is incarcerated, he will likely lose his job and be unable to find any

equivalent position.  This will create a financial hardship on his family and on his ability to pay restitution as ordered by this Court .  His wife is not working at this time, and will be able to take the children.  If Mr. LaMarche is incarcerated, she will have to work to support the family, and has noone who can help her with the children    The weekends away from his family will be punitive, and will remind him each weekend that, any additional violations will undoubtedly result in his incarceration. which would mean he would not be able to be near or care for or support his family. The continued mental health counseling will also help him learn to better navigate his own responses to crisis situations .

Respectfully Submitted,
KENNETH LAMARCHE
By His Attorney,


_____                                          November 29, 2007
Lenore Glaser, Esq. B.B.O. # 194220
One Commercial Wharf N., 2d Fl.
Boston, MA. 02110
617 753-9988

**Certificate of Service**
**I. Lenore Glaser, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on :November 29, 2007.**

**/s/ Lenore Glaser**